# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| LINDA G. BAUCOM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:18CV819 |
| | ) | |
| ANDREW SAUL, | ) | |
| Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Linda G. Baucom ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

## I.   PROCEDURAL HISTORY

Plaintiff protectively filed an application for DIB in February 2015, alleging a disability onset date of November 1, 2014. (Tr. at 15, 162-63.)[2] Her application was denied initially (Tr. at 58-70, 87-90) and upon reconsideration (Tr. at 71-86, 97-100). Thereafter, Plaintiff

---

[1] Andrew Saul was confirmed as the Commissioner of Social Security on June 4, 2019, and was sworn in on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul should be substituted for Nancy A. Berryhill as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #8].

requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 101-02.) On September 20, 2017, Plaintiff, her attorney, and an impartial vocational expert, attended the hearing. (Tr. at 30-57.) The ALJ ultimately ruled that Plaintiff did not qualify as disabled. (Tr. at 12-29.) On May 24, 2018, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review. (Tr. at 1-6.)

## II.   LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III.    DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her alleged onset date. The ALJ therefore concluded that Plaintiff met her burden at step one of the sequential evaluation process. (Tr. at 17.) At step two, the ALJ further determined that Plaintiff suffered the following severe impairment:

degenerative disc disease.

(Tr. at 17.) At step three, the ALJ found that Plaintiff's degenerative disc disease did not meet or equal the criteria of any disability listings (Tr. at 18). Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform light work with further limitations. Specifically, the ALJ found that Plaintiff could

perform light work as defined in 20 CFR 404.1567(b) except [Plaintiff] can occasionally climb ladders, ropes, or scaffolds and frequently perform posturals of balancing, stooping, kneeling, crouching, and crawling.

(Tr. at 19.) Under step four of the analysis, and in reliance upon the testimony of the VE, the ALJ determined that Plaintiff could perform her past relevant work as an Occupational Health Nurse and Head Nurse. (Tr. at 23.) Alternatively, the ALJ concluded at step five that, given

Plaintiff's age, education, work experience, and RFC, along with the testimony of the vocational expert regarding those factors, Plaintiff possessed transferrable skills that would permit her to perform the job of Office Nurse. As a result, the ALJ concluded that Plaintiff had not been disabled at any time from her onset date of November 1, 2014, through January 19, 2018, the date of the ALJ's decision. (Tr. at 24.)

Plaintiff now raises two challenges to the ALJ's decision. First, Plaintiff argues that the ALJ "improperly evaluated the medical opinion evidence in violation of 20 C.F.R. [§] 416[.]927." (Pl.'s Br. [Doc. #11] at 1.) Second, Plaintiff contends that "[t]he ALJ committed error in failing to consider [Plaintiff's] testimony and inability to engage in full time employment as a registered nurse and consideration [sic] of the impairments set forth in the RFC and medical evidence." (Pl.'s Br. at 5.) After a careful review of the record, the Court finds no basis for remand.

A.    Medical Opinion Evidence

Plaintiff first takes issue with the ALJ's determination to accord "little weight" to the opinions of Plaintiff's treating spine specialist, Dr. John A. Welshofer. Specifically, Plaintiff contends that the "ALJ failed to give the treating physician's opinion and records the appropriate weight and consideration." (Pl.'s Br. at 4 (citing Tr. at 22).) The "treating physician rule," as set out in 20 C.F.R. § 404.1527(c), generally requires an ALJ to give controlling weight to the well-supported opinion of a treating source as to the nature and severity of a claimant's impairment, based on the ability of treating sources to

> provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(c). However, if a treating source's opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the case record," it is not entitled to controlling weight. Social Security Ruling 96-2p, Policy Interpretation Ruling Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions, 1996 WL 374188, at *5 (July 2, 1996) ("SSR 96-2p"); 20 C.F.R. § 404.1527(c)(2); see also Craig, 76 F.3d at 590; Mastro, 270 F.3d at 178. Instead, the opinion must be evaluated and weighed using all of the factors provided in 20 C.F.R. § 404.1527(c)(2)(i)-(c)(6), including (1) the length of the treatment relationship, (2) the frequency of examination, (3) the nature and extent of the treatment relationship, (4) the supportability of the opinion, (5) the consistency of the opinion with the record, (6) whether the source is a specialist, and (7) any other factors that may support or contradict the opinion.

Where an ALJ declines to give controlling weight to a treating source opinion, he must "give good reasons in [his] . . . decision for the weight" assigned, taking the above factors into account. 20 C.F.R. § 404.1527(c)(2). "This requires the ALJ to provide sufficient explanation for 'meaningful review' by the courts." Thompson v. Colvin, No. 1:09CV278, 2014 WL 185218, at *5 (M.D.N.C. Jan. 15, 2014) (quotations omitted); see also SSR 96-2p (noting that the decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight").[5]

---

[5] The Court notes that for claims filed after March 27, 2017, the regulations have been amended and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. The new regulations provide that

Plaintiff sought treatment from Dr. Welshofer on November 14, 2014, while out of work on a medical leave of absence. (See Tr. at 37, 39, 295-302.) In connection with lumbar epidural steroid injections to treat Plaintiff's lower back pain on December 5, 2014 (Tr. at 307-08), Dr. Welshofer provided Plaintiff with a note providing simply:

> Linda Baucom is currently under my care.
> The patient is unable to return to work at this time.
> Date of return: 12/08/2014.

(Tr. at 294). On December 8, 2014, Dr. Welshofer issued a note extending Plaintiff's return to work date to January 1, 2015, and recommending that Plaintiff "return back to sedentary duty with no lift, push, pull or carry greater than 10 pounds and position changes as necessary." (Tr. at 309.) In conjunction with another set of lumbar epidural steroid injections on December 19, 2014 (Tr. at 314-15), Dr. Welshofer extended Plaintiff's return to work date to January 6, 2015 (Tr. at 316); however, on January 5, 2015, Dr. Welshofer examined Plaintiff (Tr. at 317-24) and changed his opinion to the following:

> Linda Baucom is currently under my care.
> The patient is unable to return to work at this time.
> Permanently unable to work.

(Tr. at 325.) In addition, the treatment notes for that date reflect the following:

> Given the multilevel cervical spinal stenosis I believe the patient is presently and will continue to be unemployable and should seek Social Security Disability and I will support her claim for the same. If she has an individual policy or work-related disability I think she also would be considered disabled due to the cervical stenosis.

---

the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c. However, the claim in the present case was filed before March 27, 2017, and the Court has therefore analyzed Plaintiff's claims pursuant to the treating physician rule set out above.

(Tr. at 320.)[6]  Finally, on October 23, 2015, Dr. Welshofer penned a "To Whom It May Concern" letter opining as follows:

> The patient has been under my care since 2008.  She has a progressive spinal degenerative condition that includes cervical spinal stenosis with spinal cord compression at C4-C5, C5-C6 and C6-C7.  The patient has a spondylolisthesis at L2-L3 with multilevel disc bulging at that level, as well as L4-L5 and L5-S1.  The patient has been through a significant number of treatments including therapies, medications, as well as injections and her symptoms have progressed to the point that I believe that she has a significant enough spinal condition that would prohibit her from working not only now but at least for the next 12 months, and likely on a permanent basis.  It is my medical opinion that the patient is disabled from gainful employment because any type of work activity will exacerbate these underlying significant spinal conditions making sustained employment impossible.

(Tr. at 353.)   The ALJ evaluated and weighed Dr. Welshofer's opinions as follows:

> The undersigned notes that on several occasions, medical providers, especially John Welshofer, M.D., involved in the care of the claimant opined that the claimant is unable to work and/or is disabled (5F/6, 21, 32, 37, 7F/l0, 8F).  However, disability is an issue reserved to the Commissioner pursuant to 20 CFR 404.1527(d) and 416.927(d).  The opinions, findings, and determinations of disability or a person's ability to work from others is given little weight in general, and is taken as no more than a general statement regarding what they feel is the seriousness of the claimant's perceived functional limitations.  The claimant's medical provider provided no additional information on these documents as to why he felt the claimant was unable to return to work unless it was "sedentary," nor does his vague medical opinion justify the claimant's inability to perform any type of work as exists in the national economy.  Further, disability is an issue reserved to the Commissioner pursuant to 20 CFR 404.1527(d) and 416.927(d).  The findings and determinations of disability from other agencies, individuals, and organizations are given little weight as, as noted in this instance, different definitions and standards are used to reach the determination of disability in the context of the claimant's ability to work.

(Tr. at 22.)

---

[6] Plaintiff's treating primary care physician, Dr. Michael Scott Camp, noted on March 27, 2015, that Dr. Welshofer had "recommended disability" and noted that he found that "a reasonable recommendation."  (Tr. at 349.)

Thus, the ALJ explained his decision to assign little weight to Dr. Welshofer's opinions, noting that: (1) an assertion that Plaintiff is disabled or unable to work is "an issue reserved to the Commissioner pursuant to 20 CFR 404.1527(d)"; (2) Dr. Welshofer "provided no additional information on these documents as to why he felt the claimant was unable to return to work unless it was 'sedentary'; (3) "his vague medical opinion" did not justify Plaintiff's "inability to perform any type of work as exists in the national economy"; and (4) such determinations that Plaintiff is disabled (or unable to work or unemployable) are given little weight given the "different definitions and standards [] used to reach the determination of disability" in various contexts. (Tr. at 22.)

Plaintiff does not challenge any of these rationales. Instead, Plaintiff asserts that the ALJ's assignment of "little weight" to Dr. Welshofer's opinions "fails to take into consideration that Dr. Welshofer has treated [Plaintiff] for a long period of time, eight years, for the same maladies." (Pl.'s Br. at 4.) In that regard, Plaintiff argues that "it is disingenuous to conclude the physician of eight years cannot evaluate [Plaintiff's] work ability, especially when considering the opinion that work activity will exacerbate the underlying diagnosed and treated conditions." (Pl.'s Br. at 4.)

However, the ALJ specifically considered all of the treating records by Dr. Welhofer included in the record, and it is clear that the ALJ considered Dr. Welshofer as Plaintiff's treating physician throughout the relevant period. (Tr. at 22.) In Dr. Welshofer's opinion, cited by the ALJ, Dr. Welshofer indicated that he had treated Plaintiff since 2008 (Tr. at 353; see also Tr. at 40 (containing Plaintiff's testimony that she started seeing Dr. Welshofer in August of 2008 and that he ordered MRIs every two years)). During the period covered by

the ALJ's decision, the record reflects that Dr. Welshofer physically examined Plaintiff in November 2014 (Tr. at 295-302); January 2015 (Tr. at 317-24); November 2016 (Tr. at 395-401, 402-12); and December 2016 (Tr. at 456-62), and the ALJ specifically discussed and cited those treatment records. Thus, the ALJ's consideration of this factor is apparent from consideration of the ALJ's decision as a whole. See Gelbart v. Berryhill, No. 17-CV-61361, 2018 WL 4573145, at *3 (S.D. Fla. Sept. 25, 2018) ("[A]lthough the ALJ did not specifically enumerate and discuss by name the regulatory factors listed in 20 C.F.R. § 404.1527, it is evident from reviewing the ALJ's decision as a whole that she considered these factors in her analysis."); Morales v. Colvin, No. 3:14-CV-2330, 2016 WL 907743, at *10 (M.D. Pa. Mar. 2, 2016) ("[T]he ALJ did in fact take the factors of 20 C.F.R. § 404.1527(d) into consideration in great detail, and simply because they were not discussed in the opinion section of the decision does not amount to error on the ALJ's part of the weight he assigned to [the treating psychiatrist's] opinion."). In the portion of the decision in which the ALJ discussed Plaintiff's RFC, the ALJ described Dr. Welshofer's treatment of Plaintiff as follows:

> Due to her pain symptoms [ ], the claimant underwent a bilateral epidural steroid injection in December 2014.
>
> The claimant's back pain improved in 2015, with the claimant reporting that the epidural reduced her pain symptoms by a quarter. Objective examination notes from this period indicate that the claimant had no significant abnormalities beyond some reduced range of motion, or difficulties with her gait and station. This is consistent with the claimant['s] reports that she was still capable of driving herself to medical appointments as necessary, and her reports of pain symptoms typically lower than '5' on a scale of one to ten, with ten being the greatest severity. . . .
>
> The claimant's physical examination notes [towards the end of 2016] indicate that while the claimant had limited range of motion of flexion and rotation in the neck along with pain complaints, her physical findings were largely unremarkable and consistent with updated diagnostic imaging that revealed little

cervical or lumbar spine changes. Further, no more than physical therapy, exercise, and other conservative methods of treatment were recommended to treat the claimant's pain complaints, which the claimant reported was helpful.

(Tr. at 20 (internal citations omitted).) Thus, while the ALJ did not expressly state that Dr. Welshofer had treated Plaintiff since 2008, the ALJ clearly discussed the length and frequency, as well as the nature and extent, of Dr. Welshofer's treatment of Plaintiff during the relevant period in this case.

Plaintiff additionally maintains that the ALJ's decision to grant "little weight" to Dr. Welshofer's opinions "fails to take into consideration that Dr. Welshofer. . . found her able to return to sedentary work with restrictions." (Pl.'s Br. at 4.) However, as set forth above, the ALJ specifically considered Dr. Welshofer's December 8, 2014 opinion, and found that Dr. Welshofer "provided no additional information on these documents as to why he felt the claimant was unable to return to work unless it was 'sedentary'", and "his vague medical opinion" did not justify Plaintiff's "inability to perform any type of work as exists in the national economy". In addition, as discussed above, Dr. Welshofer's December 8, 2014 reference to sedentary work was only a temporary opinion that was in place prior to January 5, 2015. Specifically, on December 8, 2014, Dr. Welshofer opined that Plaintiff was unable to return to work temporarily, and that at the expiration of that temporary period she could return to sedentary duty. However, Dr. Welshofer changed his opinion on January 5, 2015, to a simple determination that Plaintiff "is unable to return to work at this time" and was "[p]ermanently unable to work." The ALJ correctly discounted that opinion as involving "an issue reserved to the Commissioner pursuant to 20 CFR 404.1527(d)" (Tr. at 22; see also 20 C.F.R. § 404.1527(d) (providing that medical source statements that a claimant is "disabled"

or "unable to work" do not constitute "medical opinions" under 20 C.F.R. § 404.1527(a)(1), but are statements "on issues reserved to the Commissioner because they are administrative findings dispositive of a case," and that the Commissioner "will not give any special significance" to such statements)), a rationale that Plaintiff does not challenge (Pl.'s Br. at 3-4).

Finally, as to all of Dr. Welshofer's opinions, the ALJ correctly noted that Dr. Welshofer's disability opinions lacked a sufficient supporting explanation. (Tr. at 22.) Most of Dr. Welshofer's opinions include no discussion or explanation at all. Dr. Welshofer's October 23, 2015 opinion did list Plaintiff's diagnoses and stated that, despite various treatments, her condition had worsened. However, he still failed to explain how Plaintiff's symptoms arising from those diagnoses would preclude her from performing any work existing in significant number in the national economy, or how the conditions would limit her (Tr. at 353), particularly given Dr. Welshofer's regular findings of normal gait, station, coordination, strength, sensation, reflexes, and pulses (Tr. at 296-97, 318-19, 397-99, 405-08, 458-59), as recognized by the ALJ (Tr. at 20).

Accordingly, Plaintiff's first assignment of error fails to warrant remand.

B.      RFC and Symptom Evaluation

In Plaintiff's second issue on review, she contends that "[t]he ALJ committed error in failing to consider [Plaintiff's] testimony and inability to engage in full time employment as a registered nurse and consideration [sic] of the impairments set forth in the RFC and medical evidence." (Pl.'s Br. at 5.) Plaintiff further contends that the ALJ's dispositive hypothetical question "fails to take into consideration the severe nature of her condition and the effect of

moving around on her pain levels." (Pl.'s Br. at 6.) The Court construes this claim as a challenge to the ALJ's evaluation of Plaintiff's subjective complaints of pain.

Under the applicable regulations, the ALJ's decision must "contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." Social Security Ruling 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017) ("SSR 16-3p"); see also 20 C.F.R. § 404.1529. In Craig v. Chater, the Fourth Circuit addressed the two-part test for evaluating a claimant's statements about symptoms. Craig, 76 F.3d at 594-95. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. at 594 (emphasis omitted) (citing 20 C.F.R. §§ 416.929(b), 404.1529(b)). If such an impairment exists, the second part of the test then requires the ALJ to consider all available evidence, including a claimant's statements about pain, in order to evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [the] ability to work." Craig, 76 F.3d at 595.

This approach facilitates the ALJ's ultimate goal, which is to accurately determine the extent to which a claimant's pain or other symptoms limit the ability to perform basic work activities. Relevant evidence for this inquiry includes a claimant's "medical history, medical signs, and laboratory findings" Craig, 76 F.3d at 595, as well as the following factors set out in 20 C.F.R. § 404.1529(c)(3):

(i) [Claimant's] daily activities;

(ii) The location, duration, frequency, and intensity of [claimant's] pain or other symptoms;

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication [claimant] take[s] or [has] taken to alleviate [his] pain or other symptoms;

(v) Treatment, other than medication, [claimant] receive[s] or [has] received for relief of [his] pain or other symptoms;

(vi) Any measures [claimant] use[s] or [has] used to relieve [his] pain or other symptoms (e.g., lying flat on [his] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning [claimant's] functional limitations and restrictions due to pain or other symptoms.

Where the ALJ has considered these factors and has heard a claimant's testimony and observed his demeanor, the ALJ's determination is entitled to deference. See Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).

In the present case, Plaintiff relies on her own "testimony [ ] that activities, including stair climbing, and her household activities increase her pain level" to support her argument that the ALJ's dispositive hypothetical question and RFC inadequately accounted for her pain. (Pl.'s Br. at 6 (citing Tr. 42-46).) However, the ALJ specifically noted Plaintiff's testimony, but ultimately found that Plaintiff's subjective "statements concerning the intensity, persistence and limiting effects" of her pain were "not entirely consistent with the medical evidence and other evidence in the record." (Tr. at 20.) Therefore, Plaintiff's challenge hinges on step two of the Craig analysis.

It is undisputed that at step two of the analysis, the ALJ should not reject a claimant's statements "about the intensity and persistence of [his] pain or other symptoms or about the effect [his] symptoms have on [his] ability to work solely because the available objective medical evidence does not substantiate [his] statements." 20 C.F.R. § 404.1529(c)(2). Thus, "subjective evidence of pain intensity cannot be discounted solely based on objective medical findings." Lewis v. Berryhill, 858 F.3d 858, 866 (4th Cir. 2017). However, it is also undisputed that a plaintiff's "symptoms, including pain, will be determined to diminish [his] capacity for basic work activities [only] to the extent that [his] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4). Thus, objective medical evidence and other evidence in the record are "crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs [the] ability to work" and "[a]lthough a claimant's allegations about . . . pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges [ ]he suffers." Hines, 453 F.3d at 565 n.3 (quoting Craig, 76 F.3d at 595); see also SSR 16-3p ("[O]bjective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities . . . ."). According to the regulatory guidance:

> If an individual's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and the other

evidence of record, we will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities . . . . In contrast, if an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities . . . .

SSR 16-3p.

In the present case, a thorough review of the ALJ's decision and the record as a whole reveals that the ALJ properly considered objective medical evidence and other evidence, and explained that determination in the decision. In evaluating the evidence, the ALJ specifically identified multiple reasons supporting her determination.

First, the ALJ acknowledged Plaintiff's statements "that she experiences difficulty sleeping due to her pain symptoms, and experiences functional limitations daily that affect her ability to engage in a variety of tasks," but noted that Plaintiff "reports that she is still able to engage in light housework and complete errands, albeit at a slower or more restrained pace than she was able to in the past." (Tr. at 20.) The ALJ also considered the medical records, including the results of examinations and treatment records reflecting that "she was still capable of driving herself to medical appointments as necessary" and that she reported "pain symptoms typically lower than '5' on a scale of one to ten" in 2015, and also reflecting the effectiveness of medication and physical therapy, that she "went days without needing to use oxycodone" for severe pain in 2016, that no more than physical therapy, exercise, and other conservative methods of treatment were recommended, and that she was "doing well" with unremarkable physical findings on examination. (Tr. at 19-20.) In addition, the ALJ also gave great weight to the medical opinion of State Agency consultant Dr. Jack Drummond, who

reviewed Plaintiff's medical records and found that she retained a light residual functional capacity, with additional postural limitations. (Tr. at 21.) Plaintiff has not raised any challenge as to any of these these findings.

Having considered all of the evidence, the ALJ ultimately limited Plaintiff to light work with additional postural restrictions specifically due to the neck and back pain caused by Plaintiff's cervical and lumbar degenerative disc disease:

> [T]he record indicates that the claimant has [a] severe medically determinable impairment, as evidenced by objective medical evidence that results in limitations to the claimant's functional capacity. To that end, the [ALJ] finds that due to a combination of the claimant's severe medically determinable impairments, the claimant is limited to light exertional work. However, the claimant can only occasionally climb ladders, ropes, or scaffolds and frequently perform postural[s] of balancing, stopping, kneeling, crouching, and crawling due to a combination of her subjective pain complaints, degenerative disc disease symptoms, and the medications used to treat her degenerative disc disease.

(Tr. at 21; see also Tr. at 52 (reflecting ALJ's dispositive hypothetical question to VE which included limitation to light work and postural restrictions consistent with RFC).) Thus, the ALJ explained the RFC determination which formed the basis for the hypothetical question to the vocational expert, and relied on substantial evidence in the record to support that determination. See also Biestek v. Berryhill, 139 S. Ct. 1148 (2019) ("Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations. And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is 'more than a mere scintilla.' It means— and means only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " (internal citations omitted)).

C.    Concentration, Persistence, or Pace

Although not separated as a distinct assignment of error, Plaintiff also argues that the ALJ's adoption of the state agency psychological consultants' opinions that Plaintiff had mild difficulties in her ability to maintain concentration, persistence, or pace (Pl.'s Br. at 5 (citing Tr. 64, 78)) should have been taken into account in setting Plaintiff's RFC.  Plaintiff concedes that the ALJ found that any mental impairment was non-severe and that a finding of "mild" difficulties assumes no more than minimal limitation in the ability to do basic work activities. (Id.)  Plaintiff points out that "[b]asic work activities is [sic] defined as 'the abilities and aptitudes necessary to do most jobs'" (Pl.'s Br. at 5 (quoting 20 C.F.R. § 404.1522(b))), and Plaintiff contends that "[m]ost jobs is a broad and encompassing definition and in the case here, there were two job identified the claimant could perform, both nursing jobs." (Pl.'s Br. at 5.)  Thus, Plaintiff asserts that her "'mild' limitation should have been taken into consideration with the hypothetical in light of the very limited scope of employment found by the vocational expert" (Pl.'s Br. at 5-6).  Plaintiff emphasizes that, "[i]n her disability report, [she] states 'memory and concentration issues'; and concerning spoken instructions: 'ok; if detailed I would have to write them down.'" (Pl.'s Br. at 6 (quoting Tr. at 209) (internal citation omitted).)  Plaintiff contends that "it is questionable that a patient's health care would be entrusted to the care of an occupational or office nurse that has these 'difficulties.'" (Pl.'s Br. at 7.)

However, Plaintiff has not shown that the ALJ erred by failing to include additional limitations in the hypothetical question.  Plaintiff again relies on her own statements regarding her difficulties with memory and concentration (Pl.'s Br. at 6 (quoting Tr. at 209)), but, as

stated above, the ALJ did not fully credit Plaintiff's subjective statements (Tr. at 20), and Plaintiff did not otherwise challenge that determination (Pl.'s Br. at 4-7). Furthermore, the ALJ offered a sufficient explanation as to why Plaintiff's mild difficulty in concentration, persistence, or pace did not translate into any mental restrictions in the RFC or hypothetical question. The ALJ gave "great weight" to the opinions of the State Agency psychological consultants (Tr. at 21), who each found that, despite mild limitation in concentration, persistence, or pace (Tr. at 64, 78), Plaintiff remained able to perform a limited range of light work that did not include any mental limitations (Tr. at 66, 80-81). The ALJ additionally accorded "great weight" to the opinions of consultative psychological examiner Dr. Patrick Quinn (Tr. at 21), who noted that, despite "some minor difficulties with attention" (Tr. at 338), Plaintiff "was able to sustain attention during this evaluation" (Tr. at 333) and did "not have a psychiatric condition that would prevent her from tolerating the stress and pressures associated with day-to-day work or similar activity" (Tr. at 338).

Although not cited by Plaintiff, the Court notes that in Mascio v. Colvin, the Fourth Circuit held that if moderate limitations in concentration, persistence, or pace are reflected at step three, the ALJ should address those limitations in assessing the RFC or should explain why the limitations do not affect the claimant's ability to work. Mascio v. Colvin, 780 F.3d 632, 637-638 (4th Cir. 2015). However, in the present case, unlike in Mascio, the ALJ found no limitation in any functional area, except for the domain of concentration, persistence and pace, in which Plaintiff was mildly limited. (Tr. at 18.) Notably, the ALJ made these findings in the course of her discussion at step two of the sequential analysis, in which she found that Plaintiff's mental impairment resulted in "no more than a minimal, if any, limitation in the

claimant's ability to perform basic work activities." (Tr. at 18); see 20 C.F.R. § 404.1520a(d)(1) (providing that if the degree of limitation in the functional areas is only "none" or "mild," the impairment is not severe, unless the evidence otherwise indicates a more than minimal limitation in the ability to do basic work activities). This analysis differs from the typical Mascio scenario, in which the ALJ, having already identified one or more mental impairments as severe at step two, then performs a step three evaluation as to whether the degree of functional limitation resulting from Plaintiff's mental impairment(s) meets or equals a listed impairment. In that scenario, the resulting Mascio challenge stems from the ALJ's failure, or alleged failure, to include limitations from the claimants' severe impairments in the RFC.

This distinction is significant. "Basic work activities" are defined as functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out and remembering simple instructions, using judgment, responding appropriately to co-workers and supervisors, and dealing with changes in a routine work setting. 20 C.F.R. § 404.1522(b). Here, the ALJ found that Plaintiff's mental impairment was nonsevere, meaning that it resulted in "no more than a minimal, if any, limitation in the claimant's ability to perform basic work activities." (Tr. at 18.) In addition, as noted above, the ALJ relied on the consultative examination and the State Agency evaluators in concluding that Plaintiff did not have any work-related limitations as a result of any mental impairments. Thus, the ALJ explained why there was no mental limitation in Plaintiff's RFC, and Plaintiff's Mascio challenge is without basis. See also Sinaberry v. Saul, No. 18-2096 (4th Cir. Feb. 26, 2020).

In summary, Plaintiff has failed to show that the ALJ erred with regards to accounting for Plaintiff's mild limitation in concentration, persistence, or pace in the RFC and the dispositive hypothetical question.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Summary Judgment [Doc. #10] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #12] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 28th day of February, 2020.

/s/ Joi Elizabeth Peake
United States Magistrate Judge